**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PHILIPPE CHARRIOL INTERNATIONAL LIMITED,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>A'LOR INTERNATIONAL LIMITED,<br><br>　　　　　　Defendant. | CASE NO. 13CV1257-MMA (BGS)<br><br>**ORDER DENYING PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER;**<br><br>**DENYING APPLICATION FOR AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE;**<br><br>**DENYING APPLICATION FOR A SEIZURE ORDER;**<br><br>**DENYING APPLICATION FOR A SUBSTITUTE CUSTODIAN ORDER;**<br><br>**DENYING EXPEDITED DISCOVERY ORDER**<br><br>[Doc. No. 3] |

On May 30, 2013, Plaintiff Philippe Charriol International Limited ("Plaintiff") filed a complaint against Defendant A'lor International Limited ("Defendant") alleging trademark counterfeiting, trademark infringement, and other related claims. [Doc. No. 1.]  Plaintiff also filed an *ex parte* application for a temporary restraining order ("TRO") seeking, *inter alia*, to enjoin Defendant from

1 manufacturing and distributing jewelry which infringes Plaintiff's trademarks.
2 [Doc. No. 3.]  For the reasons set forth below, the Court **DENIES** Plaintiff's *ex*
3 *parte* TRO motion.  Accordingly, the Court also **DENIES** all accompanying
4 requests.

## BACKGROUND

6 Plaintiff Philippe Charriol International Limited is the owner of the worldwide
7 luxury brand, CHARRIOL, which creates and sells distinctive watches, jewelry,
8 leather goods, and accessories sold in more than 60 countries.  Since its inception in
9 1984, CHARRIOL has used cable as a distinctive element of its jewelry design,
10 finding inspiration from, among other things, Celtic art.  Plaintiff has trademarked
11 several cable and metallic nautical rope designs, and is actively engaged in
12 expanding its cable design jewelry throughout the world.

13 Defendant A'lor is a California corporation and is Plaintiff's exclusive
14 jewelry distributor in the United States and Canada (the "Territory").  The parties'
15 relationship is defined by an October 1, 2010 Exclusive Jewelry License Agreement.
16 Under the Jewelry Agreement, Defendant is charged with designing jewelry
17 collections and presenting them for Plaintiff's approval, and then producing the
18 collections and distributing the jewelry to Defendant's network of dealers for sale to
19 consumers.  A'lor maintains its own jewelry line in addition to distributing
20 Plaintiff's jewelry.

21 Various restrictions were placed in the Jewelry Agreement which, according
22 to Plaintiff, were intended by the parties for Plaintiff to exercise tight and unfettered
23 control over how the CHARRIOL cable design, name, appearance, image, and brand
24 was used and promoted by A'lor, and to prevent A'lor, a putative competitor with its
25 own jewelry line and products, from selling under the A'lor name.  However,
26 Plaintiff alleges that rather than fulfilling its duties under the Jewelry Agreement,
27 Defendant A'lor has instead undertaken increasingly aggressive steps to build and
28 develop its own line of "Alor" jewelry at the expense of the strength of the

CHARRIOL name and brand. Plaintiff alleges to have recently discovered that Defendant A'lor has engaged in harmful commercial activity that has damaged and will continue to harm the CHARRIOL name and brand, and create considerable confusion in the mind of consumers about the differences between A'lor's jewelry and the CHARRIOL brand. Specifically, Plaintiff cites the following acts:[1]

- A'lor's website passes-off CHARRIOL Products as A'lor products; that is, www.alor.com displays CHARRIOL Products as A'lor products. Such passing-off even includes A'lor marketing and selling CHARRIOL cufflinks which include the A'lor logo and symbol.
- A'lor knocking-off CHARRIOL Products outside the United States and Canada, for instance, in Australia and Kazakhstan. Plaintiff alleges that it just discovered that A'lor has started selling rebranded CHARRIOL Products in Australia through Acacia Agencies, an Australian-based jewelry wholesaler. Each of these CHARRIOL knock-off jewelry items are 18kt gold jewelry licensed under the Jewelry Agreement, and are composed of CHARRIOL designs approved by PCI to be manufactured and distributed by A'lor only in the U.S. and Canada. Plaintiff does not yet know, but suspects that A'lor is selling the same CHARRIOL jewelry as A'lor jewelry in Kazakhstan.
- Alor's passing-off and trading upon CHARRIOL's name within Alor's own media advertising.
- A'lor's passing-off on Facebook, by prominently inserting the A'lor name within the CHARRIOL Facebook page, or displaying CHARRIOL jewelry on the A'lor Facebook page, purporting that

---

[1] Plaintiff's motion includes a variety of other allegedly-harmful activity engaged in by Defendant. The Court has thoroughly considered each activity but, for sake of brevity, does not include them here.

          it is A'lor jewelry.

- Alor's use of the phrase "Cable & 18kt Gold Jewelry" in a manner that (1) misrepresents and confuses consumers that A'lor has an exclusive for such jewelry; and (2) is unapproved by Plaintiff as required under the Jewelry Agreement.

Based on these and other incidents, Plaintiff alleges that Defendant A'lor is violating Plaintiff's trademarks as well as breaching the parties' Jewelry Agreement. As a result, Plaintiff filed the instant action, alleging nine separate causes of action. Presently, Plaintiff requests that the Court grant a TRO against Defendant based on the actions alleged in the complaint. Specifically, Plaintiff seeks a TRO to enjoin Defendant A'lor from:

1. displaying, selling, offering for sale, or distributing jewelry depicted as "Alor" jewelry inside and outside the United States and Canada that is actually CHARRIOL jewelry designed and produced by A'lor under the Jewelry Agreement;

2. displaying, selling, offering for sale, or distributing "Alor" jewelry inside and outside the Territory that infringes upon Plaintiff's Trademarks; and

3. using Plaintiff's Trademarks in combination with A'lor's promotion, display, advertising, and sale of A'lor jewelry.

## DISCUSSION

The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). The legal standard that applies to a motion for a TRO is the same as a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO or preliminary injunction, the

moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

With respect to issuing an *ex parte* TRO, Federal Rule of Civil Procedure 65(b)(1) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney <u>*only if*</u>: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65 (emphasis added).

The United States Supreme Court has held that there are stringent restrictions imposed by Rule 65 because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose*, 415 U.S. 423 at 439. "[C]ircumstances justifying the issuance of an ex parte order are extremely limited." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). There are "a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action." *Id.* (quoting *American Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). For example, to justify an *ex parte* proceeding where an alleged infringer is likely to dispose of the infringing goods before the hearing, the "applicant must do more than assert that the adverse party would dispose of evidence if given notice." *Id.* (citation omitted). "[P]laintiffs must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of

disposing of evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.* (citation omitted).

Here, Plaintiff has not addressed or complied with the *ex parte* provisions under Federal Rule of Civil Procedure 65. In its application, Plaintiff states there is:

> great risk that A'lor would destroy (in the jewelry trade, destroy often means melt the jewelry for future use) incriminating evidence if provided with notice of this TRO without a seizure because if a restraining order issues, A'lor will be precluded from selling its offending jewelry, and would therefore have a great incentive to melt the jewelry, allowing for future use.

[TRO Mot. at 41.] A declaration by Plaintiff's managing director, Ludovic Lesur, was filed to support this assertion. [*See* Lesur Decl. ¶ 49 ("If advance notice of this TRO application is furnished to A'lor, A'lor will likely hide or destroy its relevant business records and electronically stored information."). However, Plaintiff's counsel has not filed a declaration regarding the issue of whether notice should not be required. Moreover, Plaintiff must assert more than a conclusory allegation that Defendant may dispose of evidence. *See McCord*, 452 F.3d at 1131.

Plaintiff cites a 2007 case from the Southern District of Florida for the proposition that "Counterfeiters who have no substantial investment in stationary assets will often disappear or dispose of evidence if served with a notice of hearing[.]" [TRO Mot. at 41 (citing *Dell Inc. v. Belgium Domains, LLC*, 2007 WL 6862341, at *3 (S.D. Fla. 2007)). However, *Dell* is distinguishable. There, the defendants had a history of concealing evidence by using numerous fictitious businesses, personal names, and shell entities to hide their activities. Further, defendants could destroy the relevant evidence all with just a few keystrokes, "leaving no paper trail." *Dell*, 2007 WL 6862341 at *2. "The elaborate nature of Defendants' scheme demonstrates that Defendants will go to great lengths to conceal the details of their counterfeiting and cybersquatting scheme. If Defendants learn of this proceeding, there will very likely and very quickly be nothing left." *Id.* Finally, the plaintiffs in *Dell* also demonstrated that "same persons involved in similar activities have disregarded court orders in the past." *Id.*

Here, Plaintiff does not show a history of concealment on the part of Defendant. Nor is there proof that similarly situated defendants have disregarded court orders in the past by illegally destroying evidence. Thus, the Court finds that Plaintiff has not demonstrated that this case fits within the "very narrow band of cases" in which *ex parte* orders are proper. *McCord*, 452 F.3d at 1126.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's *ex parte* application for a TRO. Accordingly, Plaintiff's accompanying motions for an order to show cause why a preliminary injunction should not issue, a seizure order, a substitute custodian order, and an expedited discovery order are also **DENIED.**

Plaintiff shall serve Defendant will all documents filed in this matter, including the complaint, the instant applications, and this Order by *June 4, 2013*, and provide proofs of service to the Court by *June 7, 2013.* Once these documents are timely served on Defendant, Plaintiff may contact the Court to schedule a hearing on the request for a preliminary injunction.

**IT IS SO ORDERED**.

DATED: May 31, 2013

*[signature]*

Hon. Michael M. Anello
United States District Judge